**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

GARY M. HAMILTON,

                           **Plaintiff,**

    vs.                                           7:14-CV-00777
                                                            (MAD/TWD)

**GENERAL MOTORS HOURLY-RATE
EMPLOYEE'S PENSION PLAN and GENERAL
MOTORS, LLC**

                           **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**GARY M. HAMILTON**
1 Highland Park
Massena, New York 13662
Plaintiff, *pro se*

**SCHRÖDER, JOSEPH &**               **GINGER D. SCHRÖDER, ESQ.**
**ASSOCIATES, LLP**
766 Ellicott Street
Buffalo, New York 14203
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    *Pro se* plaintiff, Gary Hamilton, commenced this action on June 26, 2014, alleging breach of fiduciary duty and equitable estoppel under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Dkt. No. 1. Plaintiff later clarified that the true nature of his claim is one for improper denial of pension benefits. *See* Dkt. No. 18 at ¶¶ 8-9. Plaintiff originally filed his complaint against General Motors Corporation Hourly-Rate Employee's Pension Plan (the "Plan") and its Plan Administrator, Kevin Cobb. *See* Dkt. No. 1. On July 21, 2014, Plaintiff voluntarily

dismissed Defendant Kevin Cobb with prejudice. *See* Dkt. No. 5. On July 24, 2014, Plaintiff filed an amended complaint naming the Plan and General Motors, LLC ("GM") as Defendants. *See* Dkt. No. 10. On November 17, 2014, the parties submitted a Joint Statement of Stipulated Facts; the record is undisputed. *See* Dkt. No. 21. Pursuant to Federal Rule of Civil Procedure 56, both parties filed cross motions for summary judgment based on the administrative record. *See* Dkt. Nos. 24 & 25. Currently before the Court are the parties' motions for summary judgment.

## II. BACKGROUND

### A.     The parties' dispute

The Plan in dispute is a defined benefit plan governed by the ERISA and, as Plan Administrator, GM has full authority to administer the Plan. *See* Dkt. No. 21 at ¶¶ 3-4. The Plan offers additional credited service for employees who work at designated foundry locations and meet other requirements. *See id.* at ¶ 5. As a seniority employee, Plaintiff is entitled to participate in the Plan. *See* Dkt. No. 10 at ¶ 6.

In 1976, Plaintiff began working at GM as an hourly union employee. *See id.* From 1976 until his transfer in 2009, Plaintiff worked for GM at its Linden and Massena plant locations. *See* Dkt. No. 21 at ¶ 6. In March of 2009, Plaintiff transferred from Massena Powertrain ("Massena") to Saginaw Metal Casting Operation Plant ("Saginaw"). *See id.* at ¶ 7. The transfer occurred pursuant to a separate collective bargaining agreement, a Memorandum of Understanding ("MOU"), between GM and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("the Union"). *See* Dkt. No. 23 at 14-18; Dkt. No. 10 at ¶ 12. The parties' stated intent under the MOU was "to ensure that employees who desired employment at Saginaw would receive an offer of employment and to minimize union grievances as a result of the changing job assignments during the transition period." *See* Dkt. No.

2

21 at ¶ 9. The MOU further stated that "[e]mployees transferred pursuant to this [MOU] shall bring with them their entire personnel record as though their full period of service had been at [Saginaw]." *See id.* at ¶ 10.

In 2010, prior to his retirement, Plaintiff applied for additional credited service under the Plan. *See* Dkt. No. 23 at 2. Approximately one week later, Defendants responded, "[w]ith respect to the submission of your Request . . . it has been determined that as of 09/30/2010 your credited service remains unchanged at 34.6 years." *See id.* at 3. On October 21, 2010, Plaintiff sent Defendants a copy of the MOU and argued that, according to the MOU, all of his credited service should be treated as though he spent the entirety of his career at Saginaw, which is a designated foundry location. *See id.* at 4. On November 23, 2010, Defendants sent Plaintiff a letter reiterating that his credited service remained unchanged because his foundry service began on 03/16/2009, and "[p]er Article III, Section 5 and Appendix B of the Plan, Massena is not a plant that is specified for foundry job classifications." *See id.* at 5. The parties do not dispute the fact that the Linden and Massena Plants are classified as non-foundry service locations, and Saginaw is considered a foundry service location. *See* Dkt. No. 21 at ¶¶ 6-7.

After working at Saginaw for four years, Plaintiff retired on October 1, 2013. *See id.* at ¶ 8; Dkt. No. 10 at ¶ 14. Pursuant to the Plan, Plaintiff began receiving a monthly pension benefit of $2,032.28; this figure was calculated by multiplying the Class C rate of $54.05 by 37.6 credited service years. *See* Dkt. No. 10 at ¶ 14. On July 31, 2013, Plaintiff executed a Pension Election Authorization, which confirmed his pension calculations to be correct. *See* Dkt. No. 21 at ¶ 12; Dkt. No. 23 at 6. Shortly after retirement, Plaintiff requested review of his claim by the Department of Labor ("DOL"). *See* Dkt. No. 21 at ¶ 13; Dkt. No. 23 at 12. The DOL received Plaintiff's request on August 16, 2013, and forwarded it to Defendants on September 5, 2013. *See*

3

*id.* On September 9, 2013, Defendants sent a letter to Plaintiff affirming his current credited service and restating that, under Article III, Section 5 and Appendix B of the Plan, Massena is not a plant specified for foundry job classifications. *See* Dkt. No. 21 at ¶ 14; Dkt. No. 23 at 22. On October 10, 2013, Plaintiff again applied for 7.5 additional credited service years for his service at Saginaw; this letter was Plaintiff's final administrative appeal. *See* Dkt. No. 21 at ¶ 15; Dkt. No. 23 at 24. By letter dated November 4, 2013, Defendants denied Plaintiff's request for additional credited service. *See* Dkt. No. 21 at ¶ 16; Dkt. No. 23 at 34.

In a letter written to Kristen Shaw at the DOL, Defendants explained that the MOU relied upon by Plaintiff was not intended to amend the Plan:

> [The MOU] language is specific to employment seniority and the employment record; there is nothing in this or other MOU language that suggests that [Plaintiff] would be provided with additional foundry service for time . . . worked at a non-foundry location. The Plan provisions are quite clear as to the applicability of foundry service. [Plaintiff] does not meet the requirements of the Plan to have additional foundry service added to his record. His credited service of 37.6 years is correct . . .

*See* Dkt. No. 21 at ¶ 17. Having exhausted his administrative remedies, Plaintiff commenced this action on July 21, 2014. *See id.* at ¶ 15; *see also* Dkt. No. 1.

**B.   Relevant Provisions of the Plan**

Article VI, Section 1 of the Plan addresses administration of the Plan: "General Motors is the Plan Administrator and has the full authority to construe, interpret and administer the plan. . . . [General Motors] shall be responsible . . . for carrying out the provisions thereof." *See* Dkt. No. 23 at 50.

Article III, Section 5 of the Plan deals with additional credited service for employment at designated foundry locations:

4

**Section 5: Foundry Service**

> An employee with seniority . . . who at retirement age has over 10 years of credited service which such employee accrued while employed on certain foundry job classifications as set forth in Appendix B, shall receive additional credited service related thereto. Total credited service for any such employee who retires with benefits payable commencing on or after October 1, 1975 shall be the sum of (i) credited service otherwise credited to the employee, and (ii) any such additional credited service which shall be credited to the employee in accordance with the following table:

| Years of Credited Service Credited on Foundry Jobs | Additional Credited Service |
| --- | --- |
| For Years 1 through 10 | 0 |
| For Years 10 through 25 | 33-1/3% |
| For years over 25 | 20% |

*See* Dkt. No. 21 at ¶ 5; Dkt. No. 23 at 49. Appendix B of the Plan provides as follows:

> For the sole purpose of Article III, Section 5 of the Plan, all approved job classifications set forth in the Local Wage Agreements as of September 14, 2011 of the GM Powertrain Plants in Defiance, Ohio (Defiance Castings, Engines, Transmissions) and Saginaw, Michigan (Saginaw Metal Casting Operation) are designated foundry jobs at the respective plant locations . . . No other job classifications shall be designated foundry jobs.

*See* Dkt. No. 23 at 51.

On December 5, 2008, GM and the Union executed an MOU to deal with the transfer of major operations from Massena (the "Sending Plant") to Saginaw (the "Receiving Plant"). *See id.* at 14. The intent of the parties and the purpose of the agreement is embodied in the language of the MOU:

> WHEREAS, it is the intent of the parties, and the purpose of this MEMORANDUM OF UNDERSTANDING, to the extent practicable:
> a. To establish a procedure whereby certain employees who are employed in the Sending Plant, who desire employment at the

> > Receiving Plant may, within the limits hereinafter set forth, be offered such employment; and
>
> > b. To minimize grievances which might otherwise arise as a result of the employment of such employees and the changing of the job assignments during the transition period.

*See id.* at 15.  Finally, as set forth below, Plaintiff cites this provision of the MOU in support of his argument that he should receive additional credited service.  Defendants contend that this provision in no way alters the language of the Plan.  The provision at issue states:

> The seniority of an applicant who is transferred pursuant to this MEMORANDUM OF UNDERSTANDING shall be the full seniority the employee has on record together with the employee's complete history and records and the rights to which the employee is or may thereafter become entitled under Supplemental Agreements, Exhibits "A", "B", "C", "D", "E", "F", "G", "H", and "I" to the GM-UAW National Agreement dated October 15, 2007.  Thereafter, the employee will have no further seniority rights or other rights at the Sending Plant.
>
> Employees transferred pursuant to this MEMORANDUM OF UNDERSTANDING shall bring with them their entire personnel record as though their full period of service had been at the Receiving Plant.

*See id.* at 17; *see also* Dkt. No. 24 at 13.

### C.    **Plaintiff's Position**

Plaintiff contends that he was transferred from Massena to Saginaw under the terms of the MOU, thereby modifying the terms of the Plan; as proof, Plaintiff cites the provision of the MOU which states: "Employees transferred pursuant to this [MOU] shall bring with them *their entire personnel record as though their full period of service had been at the Receiving Plant*."  *See* Dkt. No. 24 at 6 (emphasis added).  Plaintiff alleges that these terms unambiguously mean that "Plaintiff's service should be viewed as though he worked at Saginaw . . . for the entire extent of

6

his career." *Id.* Plaintiff supports his position by providing an audit which demonstrates that when Plaintiff was transferred from Linden to Massena in 2003, his entire personnel record transferred with him as if his full period of service had been at Massena. *See id.* at 17-20. According to Plaintiff, that transfer occurred pursuant to an agreement with terms similar to the MOU. *Id.* at 6. Plaintiff also emphasizes the phrase "full seniority" as unambiguous, and explains that seniority is a means for calculating credited service under the Plan. *Id.*; *see also* Dkt. No. 24 at 13 (referencing the provision of the MOU which states: "The seniority of an applicant who is transferred pursuant to this MOU shall be the *full seniority* the employee has on record . . ."). Finally, Plaintiff contends that the MOU purports to modify the terms of the Plan, because the MOU explicitly applies to Supplemental Agreement Exhibit "A," and Exhibit "A" is the pension agreement in its entirety. *Id.*; *see also* Dkt. No. 23 at 46.

Additionally, Plaintiff argues that the MOU should be reviewed under a *de novo* standard of review, as opposed to the deferential arbitrary and capricious standard, because the terms of the MOU do not grant Defendants the authority to interpret the MOU. *Id.* at 7. Plaintiff also applies basic contract law principles in arguing that the contract language should be construed against the drafter. *See id.* Finally, Plaintiff alleges breach of fiduciary duty, but does not allege any misconduct on Defendants' behalf, apart from the improper denial of benefits. *Id.*

In his opposition to Defendants' motion for summary judgment, Plaintiff argues that Defendants' interpretation of the MOU is "narrow, limited in scope, [and] unreasonable." *See* Dkt. No. 27 at 1. Again, Plaintiff argues that the MOU does mention the Plan, because Exhibit "A" contains the Plan in its entirety. *Id.* at 2. Plaintiff also points out that the Plan, by its terms, does not "prohibit the [D]efendants and the UAW from drafting an [MOU] to clarify the pension plan agreement." *Id.* Finally Plaintiff alleges breach of fiduciary duty because GM

7

representatives went to the Massena plant and "gave [out] copies of the [MOU] . . . that materially misrepresented . . . how the Plaintiff's credited service would be calculated to determine monthly pension benefits." *Id.* at 2-3.

**D.     Defendants' Position**

Defendants first underscore the language of the Plan, which grants Defendants full authority to construe, interpret and administer the Plan. *See* Dkt. No. 25-2 at 5, 11; Dkt. No. 21 at ¶ 4. Defendants assert that this grant of discretionary authority triggers the arbitrary and capricious standard of review under ERISA, meaning that "[Defendants'] benefit determination cannot be disturbed unless the Court concludes that [Defendants'] decision was . . . 'without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" *See* Dkt. No. 25-2 at 11 (citation omitted). Defendants contend that this standard is a deferential one, and that judicial review is limited to the administrative record. *Id.* Next, Defendants cite the language of the MOU and emphasize that its true focus was on easing the transfer of operations from Massena to Saginaw in 2009. *Id.* at 7. Defendants argue that "[t]he MOU is not a Plan document; it does not even make reference to the Plan, to pension benefits, or to foundry job classifications." *Id.* Further, Defendants argue that Plaintiff unreasonably interpreted the MOU's impact on his pension benefits: "[t]he MOU did not purport to create enhanced rights for transferred employees . . . [nor did the MOU] purport to create or modify any pension benefits or rights." *Id.* at 8. Defendants support their position by stating the rationale behind providing additional credited service to those who have worked at a foundry location for an extended period of time: "[such a] benefit enhancement [was] designed to recognize risks associated with long-term exposure to certain foundry occupations." *Id.* at 13.

8

Defendants argue that, not only is their interpretation reasonable, but Plaintiff's interpretation is unreasonable: "Plaintiff unreasonably interprets the MOU as creating new or different rights without regard to the Plan's controlling terms." *See* Dkt. No. 28 at 2. Defendants then note that the relevant provisions of the Plan and Plaintiff's employment history are not in dispute; ten years of foundry service is explicitly required under the Plan in order to qualify for enhanced benefits, and Plaintiff worked at a designated foundry location, Saginaw, for only four years. *See* Dkt. No. 25-2 at 13-15. Ultimately, Defendants argue that Plaintiff cannot prove that Defendants' interpretation of the MOU's impact on the Plan, or lack thereof, is unreasonable. *Id.* at 10.

In regards to Plaintiff's breach of fiduciary duty claim, Defendants point out that Plaintiff has not alleged any misconduct on Defendants' part, aside from the denial of benefits. *Id.* at 15. For this reason, Defendants contend that Plaintiff's breach of fiduciary duty claim is merely a restatement of his unpaid benefits claim, and therefore must be dismissed as a matter of law. *Id.* Likewise, Defendants argue that Plaintiff's equitable estoppel claim must be dismissed because Plaintiff has not alleged any of the elements of an equitable estoppel claim under ERISA. *Id.* at 16. Defendants contend that the Second Circuit only recognizes an equitable estoppel claim under ERISA in the "narrowest and most extreme cases," and requires the plaintiff to plead "extraordinary circumstances . . . in addition to the traditional elements of misrepresentation, reasonable reliance, and resulting damage." *Id* (citation omitted). In sum, Defendants assert that "[t]he MOU does not make any representation about pension benefits or foundry service, let alone any intentional misrepresentation to induce Plaintiff to take action." *Id*. at 16.

### III. DISCUSSION

**A.     Standard of Review**

9

*1. Summary Judgment Standard*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights

merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a pro se litigant from following the procedural formalities of summary judgment." *Id.* at 295 (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### *2. Arbitrary and Capricious Standard Under ERISA*

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Moreover, to avoid *de novo* review, a plan must "give some unambiguous indication that discretion has been conferred." *Shapiro v. New York University*, 640 F. Supp. 2d 411, 419 (S.D.N.Y. 2009) (citing *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 73 (2d Cir. 2001)). Finally, when a plan administrator has the responsibility of both evaluating and paying benefit claims, as in this case, it "creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *Giles v. AT&T, Inc.*, No. 6:09-CV-293, 2012 WL 398990, *9 (N.D.N.Y. Feb. 7, 2012) (citing *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 82-83 (2d Cir. 2009)) (other citation omitted).

When discretionary authority has been granted and *de novo* review is not appropriate,

"the court may reverse only if [the plan administrator's] decision was arbitrary and capricious." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995). A plan administrator's decision is arbitrary and capricious when it is "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Id.* (citation omitted). In determining whether a plan administrator's decision is supported by "substantial evidence," courts consider whether there was "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator." *Giles*, 2012 WL 398990, at *9 (quoting *Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003)). Although there must be more than a "scintilla" of evidence to support the plan administrator's decision, the amount of evidence required to be considered adequate does not rise to the level of preponderance. *See Miller*, 72 F.3d at 1072. Ultimately, "[t]his scope of review is narrow, thus [courts] are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

## B. ERISA Claims

### *1. Denial of Benefits*

Under ERISA, "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(b). As discussed above, a plan administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan, by its terms, gives the administrator discretionary authority to interpret the plan or determine eligibility of its beneficiaries. *Firestone Tire & Rubber Co.*, 489 U.S. at 115. In this case, Defendants have unambiguously been granted the authority to interpret the Plan: "General Motors is the Plan Administrator and has the full

12

authority to construe, interpret, and administer the plan." *See* Dkt. No. 23 at 50; *see also* Dkt. No. 21 at ¶ 4 (the Joint Statement of Stipulated Facts in which the parties agree that Defendants possess "full authority to administer the Plan"). In his motion for summary judgment, Plaintiff advocates for a *de novo* standard of review instead, because the MOU did not grant Defendants any discretionary authority. *See* Dkt. No. 24 at 7. This fact is irrelevant, however, because the Plan itself clearly does grant Defendants discretionary authority. *See Tocker v. Phillip Morris Companies, Inc.*, 470 F.3d 481 (2d Cir. 2006) (finding that the arbitrary and capricious standard still applied even though the summary plan description did not grant the plan administrator discretionary authority because the plan itself did). In addition, as Defendants correctly argue, the terms of the MOU do not contradict the Plan; rather, the MOU makes no explicit reference to the Plan. Therefore, Plaintiff would not have a claim for enhanced pension benefits based on the MOU alone; Plaintiff's claim necessarily involves the language of the Plan. *See* Dkt. No. 26 at 4. For these reasons, the arbitrary and capricious standard of review governs Defendants' alleged improper denial of enhanced benefits.

The Second Circuit has held that the district court's review under the arbitrary and capricious standard is limited to the administrative record. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir. 1994) (holding that courts must be limited "only to the facts known to the administrator"). Therefore, the audits that Plaintiff provided in his motion for summary judgment will not be considered. *See* Dkt. No. 24 at 17-20. However, even if, for the sake of argument, the Court considered the audits of Plaintiff's previous transfer, that transfer is distinguishable from the transfer at issue; then Plaintiff transferred from a non-foundry location to another non-foundry location, whereas in this case, Plaintiff transferred from a non-foundry location to a foundry location. This distinction is particularly significant when taking into consideration the reasoning

13

behind the Plan's offer of enhanced benefits for foundry service, which is "recogniz[ing] the risks associated with long-term exposure to certain foundry occupations." *See* Dkt. No. 25-2 at 13. Defendants reasonably argue that if Plaintiff was not physically working at a designated foundry location, then he could not have been exposed to the risks; therefore, he should not reap the benefits of enhanced credited service.

"Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Shapiro v. New York Univ.*, 640 F. Supp. 2d 411, 420 (S.D.N.Y. 2009) (quoting *Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)). In other words, "[t]he court may not upset a reasonable interpretation by the administrator." *Jordan v. Retirement Committee of Renselaer Polytechnic Institute*, 46 F.3d 1264, 1271 (2d Cir. 1995) (citations omitted). Although Plaintiff's interpretation of the Plan is conceivable, Defendants' interpretation is undisputably reasonable. The language of the Plan unambiguously provides for additional credited service only when an employee has over ten years of credited service "accrued *while employed* on certain foundry job classifications as set forth in Appendix B." *See* Dkt. No. 21 at ¶ 5 (emphasis added); Dkt. No. 23 at 49. Further, the explicitly stated purpose of the MOU agreement is "to establish procedures" to facilitate the transfer of employees from Massena to Saginaw, as well as "to minimize grievances which might otherwise arise as a result of . . . the changing of the job assignments during the transition period." *See* Dkt. No. 23 at 15. Taking into consideration the purpose of the MOU in conjunction with the MOU's noted silence on the terms of the Plan, Defendants' conclusion that the MOU does not alter the terms of the Plan is valid and reasonable. The Defendants' characterization of the MOU as essentially a human resources agreement "designed to ease employee transition between two operations," is clearly reasonable under the circumstances. *See*

Dkt. No. 25-2 at 13.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for improper denial of benefits.

### *2. Breach of Fiduciary Duty*

"ERISA permits individual suits for equitable relief to remedy a breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3)." *Giordano v. Coca-Cola Enterprises, Inc.*, No. CV 08-0391, 2011 WL 839507, *8 (E.D.N.Y. Mar. 7, 2011) (quoting *Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*, No. 5:06-CV-42, 2007 WL 925721, *6 (N.D.N.Y. Mar. 26, 2007)) (other citation omitted). The ERISA provision that provides a remedy for breach of fiduciary duty provides as follows: "A civil action may be brought . . . by a participant, beneficiary or fiduciary (A) to enjoin any act or practice that violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). "Equitable relief . . . is 'appropriate' only where Congress has not provided adequate relief elsewhere." *Giordano*, 2011 WL 839507, at *8 (citing *Varity Corp. v. CNA Financial*, 516 U.S. 498, 515 (1996)). "[P]laintiffs may not restate claims for unpaid benefits and statutory damages as claims in equity under [ERISA]. Equitable remedies under [ERISA] are available only where ERISA's civil enforcement provisions do not provide adequate relief." *Giles v. AT&T, Inc.*, No. 6:09-CV-293, 2012 WL 398990, *15 (N.D.N.Y. Feb. 7, 2012) (citations omitted). In *Giles,* for example, the plaintiff's breach of fiduciary duty claim was dismissed because the plaintiff alleged that the defendants "wrongfully den[ied] benefits under the plan," essentially restating the plaintiffs' claim for unpaid benefits. *Id*. at *14-15.

Some examples of fiduciary duties imposed by ERISA include "the management of plan assets, the maintenance of records, disclosure of specified information, and avoidance of conflicts

15

of interest." *Varity Corp. v. Howe*, 516 U.S. 489, 526 n.5 (1996) (Thomas, J. dissenting) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142-43 (1985)).  Apart from the denial of benefits, Plaintiff's amended complaint does not allege a breach of any Defendants' statutorily imposed fiduciary duties.  Rather, as Defendants correctly argue, Plaintiff's breach of fiduciary duty claim is merely a restatement of his unpaid benefits claim, and therefore must be dismissed.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's breach of fiduciary duty claim.

### *3. Promissory Estoppel*

"Principles of estoppel can apply in ERISA cases under extraordinary circumstances." *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 85 (2d Cir. 2001) (citation omitted). In order to state a claim for promissory estoppel, a plaintiff must plausibly allege the following: "(1) a promise; (2) reliance on the promise; (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Id.* (citing *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999)) (other citation omitted).  In other words, "for purposes of ERISA [courts require] . . . that [the] plaintiff demonstrate a promise that [the] defendant reasonably should have expected to induce action or forbearance on [the plaintiff's] part." *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 86 (2d Cir. 2001) (citing *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 79 (2d Cir. 1996)).  In addition, in an ERISA case, a plaintiff must "adduce . . . facts sufficient to satisfy an extraordinary circumstances requirement as well." *Id*. (citation and quotation omitted).  An example of an "extraordinary circumstance" can be found in *Schonholz v. Long Island Jewish Medical Center*, in which an employer promised severance benefits to induce the plaintiff to resign; the plaintiff resigned four days after becoming aware of the severance plan, but immediately after resigning, the defendants informed her that the

16

severance plan was "deemed invalid and null and void and never to have been effective." *Schonholz*, 87 F.3d at 74.

In this case, the Court need not reach the issue of "extraordinary circumstances" because no promise was made by Defendants to Plaintiff that Defendants "reasonably should have expected to induce action or forbearance." Aside from Defendants' representatives "present[ing], post[ing], and [giving out] copies of the MOU," which Plaintiff alleges "materially misrepresented" how Plaintiff's pension benefits would be calculated, Defendants made no promise to Plaintiff regarding enhanced pension benefits. *See Fitch v. Chase Manhattan Bank, N.A.*, 64 F. Supp. 2d 212, 224 (W.D.N.Y. 1999) ("[A]bsent a showing of proof tantamount to fraud, ERISA plans cannot be amended as a result of informal communications between an employer and plan beneficiaries") (citation omitted). As discussed above, Plaintiff's interpretation of the MOU's impact on the Plan simply is not embodied in the terms or purpose of the MOU agreement, and therefore the MOU could not have, in itself, "materially misrepresented" the method by which Plaintiff's pension benefits would be calculated.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 22, 2015
       Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge